McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys at Law
1300 Mount Kemble Avenue
Morristown, New Jersey 07962-2075
Attorneys for Defendants,
Metropolitan Life Insurance Company,
incorrectly pleaded as "the Plan
Administrator of the Honeywell Long
Term Disability Income Plan" and Honeywell
Long Term Disability Income Plan

By: _____
          Randi F. Knepper

| | |
|---|---|
| MITCHELL BENESOWITZ, | UNITED STATES DISTRICT COURT |
| | EASTERN DISTRICT OF NEW YORK |
| Plaintiff, | |
| vs. | |
| | CIVIL ACTION NO. 2:04-cv-000805-TCP-JO |
| METROPOLITAN LIFE INSURANCE COMPANY, PLAN ADMINISTRATOR OF THE HONEYWELL LONG TERM DISABILITY INCOME PLAN AND HONEYWELL LONG TERM DISABILITY INCOME PLAN, | |
| Defendants. | |

---

## LEGAL MEMORANDUM IN SUPPORT OF THE DEFENDANTS' MOTION FOR JUDGMENT BASED ON THE INAPPLICABILITY OF NEW YORK LAW AND IN OPPOSITION TO AN AWARD OF ATTORNEYS FEES

---

Of Counsel &
On the Brief
Randi F. Knepper, Esq.
and Amy K. Posner, Esq.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

PRELIMINARY STATEMENT ....................................................................... 1

PROCEDURAL HISTORY AND RELEVANT FACTS ....................................... 3

LEGAL ARGUMENT

POINT I

    JUDGMENT SHOULD BE ENTERED IN FAVOR OF THE
    DEFENDANTS AS NEW YORK INSURANCE LAW § 3234(A)(2)
    IS NOT APPLICABLE TO THE DELAWARE EMPLOYER GROUP
    POLICY AT ISSUE, AND THE DOCTRINE OF "LAW OF THE
    CASE" FAVORS DEPARTING FROM THE PRIOR HOLDING IN
    THESE CIRCUMSTANCES................................................................... 6

POINT II

    NO ATTORNEYS FEES SHOULD BE AWARDED TO
    BENESOWITZ AS HE CANNOT DEMONSTRATE
    ENTITLEMENT UNDER THE APPLICABLE FIVE
    FACTOR TEST ................................................................................ 10

    A. NO BAD FAITH CAN BE DEMONSTRATED ................................... 11

    B. NO DETERRENT EFFECT ............................................................ 13

    C. DEFENDANTS' POSITION DID NOT LACK MERIT ........................ 14

    D. NO COMMON BENEFIT BESTOWED ON ANY GROUP OF
       HONEYWELL PLAN PARTICIPANTS ............................................. 14

CONCLUSION........................................................................................ 16

# TABLE OF AUTHORITIES

Cases  **Page**

Arizona v. California,
 460 U.S. 605 & n.8 ................................................................................ 1, 6, 7

Benesowitz v. Metro. Life Ins. Co.,
 386 F. Supp. 2d 132 (E.D.N.Y. 2005), *vacated* 514 F.3d 174 (2007)...................................... 4

Benesowitz v. Metro. Life Inc. Co.,
 514 F.3d 174 (2d Cir. 2007) ................................................................................ 5

Benesowitz v. Metro. Life Ins. Co.,
 471 F.3d 348 (2d Cir. 2008) ................................................................... 2, 5, 16

Benesowitz v. Metro. Life Ins. Co.,
 8 N.Y.3d 661; 870 N.E. 2d 1136; 839 N.Y.S.2d 706 (2007) ........................................ 2, 5, 15

Chambless v. Masters, Mates & Pilot Pension Plan,
 815 F.2d 869 (2d Cir. 1987) ................................................................... 2, 10

Cook v. Liberty Life Ins. Co.,
 334 F.3d 122 (1st Cir. 2003)................................................................................ 11

Corporation of Lloyd v. Lloyds, U.S.,
 831 F.2d 33 (2d Cir. 1987) ................................................................................ 7

Critchlow v. First UNUM Life Ins. Co.,
 377 F. Supp. 2d 337 (W.D.N.Y. 2005) ................................................................ 11

Davis v. Mid-Century, Inc., Co.,
 311 F.3d 1250 (10th Cir. 2002) ................................................................ 11

Dixon v. Seafarers' Welfare Plan,
 878 F.2d 1411 (11th Cir. 1989) ................................................................ 11

Harris Trust and Savings Bank v. John Hancock Mutual Life Ins. Co.,
 970 F.2d 1138 (2d Cir. 1992) ................................................................ 7

Krauss v. Oxford Health Plans, Inc.,
 418 F. Supp. 2d 416 (S.D.N.Y. 2005) ................................................................ 11

Lauder v. First UNUM Life Ins. Co.,
   284 F.3d 375 (2d Cir. 2001).................................................................................... 11

Leyda v. Allied Signal, Inc.,
   322 F.3d 199 (2d Cir. 2003).................................................................................... 11

Miller v. United Welfare Fund,
   72 F.3d 1066 (2d Cir. 1995)..................................................................................... 10

Morgan v. Wal-Mart Associates' Health and Welfare Plan,
   214 F.Supp.2d 1047 (D. Ariz. 2002) ...................................................................... 12

New York Teamsters Conference Pension and Retirement Fund v. Boening Bros. Inc.,
   92 F.3d 127, 130 (2d Cir. 1996)............................................................................... 12

Pulvers v. First UNUM Life Ins. Co.,
   210 F.3d 89 (2d Cir. 2000)............................................................................... 2, 4, 13

Quigley v. UNUM Life Ins. Co.,
   340 F. Supp. 2d 215 (D. Conn. 2004) ...................................................................... 11

Southern R. Co. v. Clift,
   260 U.S. 316 (1922)................................................................................................... 7

TPLC, Inc. v. United Nat'l. Ins. Co.,
   44 F.3d 1484 (10th Cir. 1995) .................................................................................. 12

U.S. v. Lawson,
   736 F.2d 835 (2d Cir. 1984)........................................................................................ 7

U.S. v. Uccio,
   940 F.2d 753 (2d Cir. 1991)........................................................................................ 7

Universal Studios, Inc. v. Nintendo Co., Ltd,
   578 F. Supp. 911 (S.D.N.Y. 1983) ............................................................................. 7

Statutes

29 U.S.C. § 1002.................................................................................................................. 1

29 U.S.C. § 1132(g)(1) ...................................................................................................... 10

29 U.S.C. §§ 1001-1461 ................................................................................................................ 9

N.Y. Ins. Law § 3201(b)(1) ................................................................................................... 1, 8, 9

N.Y. Ins. Law § 4235(c)(1)(A) ............................................................................................. 1, 8, 9

New York Insurance Law § 3201 .................................................................................................. 8

New York Insurance Law § 3234 .......................................................................................... passim

New York Insurance Law § 3234(a)(2) ................................................................................. passim

New York Insurance Law § 4235 .................................................................................................. 8

Other Legal Authorities

2005 N.Y. Ins. GC Opinion LEXIS 118 (May 9, 2005) ................................................................ 8

2005 N.Y. Ins. GC Opinion LEXIS 2062 (Oct. 14, 2004) ....................................................... 8, 9

2005 N.Y. Ins. GC Opinion LEXIS 320 (Oct. 2, 2002) ............................................................... 9

Circular Letter No. 14 (Dec. 14, 2003) ................................................................................. 14, 15

# PRELIMINARY STATEMENT

This legal memorandum is submitted on behalf of Metropolitan Life Insurance Company ("MetLife"), incorrectly sued as the Plan Administrator of the Honeywell Long Term Disability Income Plan, and the Honeywell Long Term Disability Plan (the "Plan") (referred to hereinafter collectively as the "Defendants")[1] in support of their motion seeking that this Court (1) enter judgment in their favor and dismiss the complaint with prejudice because New York Insurance Law § 3234(a)(2) is not applicable to this action as the group policy is not subject to New York law, and therefore, no benefits are payable under the undisputed facts and clear terms of the plan; and (2) that Benesowitz is not entitled to attorneys fees as he cannot satisfy the five-factor test.

In a now-vacated decision, this Court found that New York law was applicable to this action. The statute clearly provides that New York law is not applicable to group policies issued in other states where the employer is the policyholder and eligibility for coverage is determined by conditions of employment. N.Y. Ins. Law § 3201(b)(1) referring to N.Y. Ins. Law § 4235(c)(1)(A). MetLife's prior counsel inadequately briefed this decisive provision, and plaintiff replaced the reference to the pertinent provision with an ellipsis. Settled federal law allows a court to revisit such matters to avoid manifest injustice. Arizona v. California, 460 U.S. 605, 618 & n.8; 103 S. Ct. 1382, 1391 & n.8 (1983). Accordingly, it is respectfully requested that this Court hold that New York law is inapplicable to this action as the group policy was issued and delivered to the plaintiff's employer in Delaware.

Moreover, Benesowitz seeks attorneys fees up until this point in the litigation, but clearly is not eligible for them pursuant the five factor test enunciated by the Second Circuit in

---

[1] MetLife is the Plan's claim fiduciary. The Plan administrator is Honeywell International, Inc., which is also the Plan sponsor. *See* Honeywell Long Term Disability (LTD) Income Plan Summary Plan Description (the "Plan"), p. 15 (Certification of Counsel, Exhibit "A") and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002.

Chambless v. Masters, Mates & Pilot Pension Plan, 815 F.2d 869 (2d Cir. 1987). The Defendants clearly did not engage in culpable conduct or act in bad faith because their position that the terms of the Plan unambiguously state that no benefits will be paid for disabilities resulting from pre-existing conditions, was supported by Second Circuit law existing at the time. Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89 (2d Cir. 2000). This Court agreed, and the Second Circuit found on two occasions that there was an issue of first impression requiring an interpretation of New York Insurance Law § 3234(a)(2). *See, e.g.,* Pulvers at 95. Here, it certified that issue to the New York Court of Appeals. Benesowitz v. Metro. Life Ins. Co., 471 F.3d 348 (2d Cir. 2008). The New York Court of Appeals held that the pre-existing condition exclusion resulted in a twelve-month tolling of eligibility for benefits, but not an absolute bar. Benesowitz v. Metro. Life Ins. Co., 8 N.Y.3d 661; 870 N.E. 2d 1136; 839 N.Y.S.2d 706 (2007). Attorneys' fees should not be awarded because a necessary component of bad faith is that the law be settled, and the Second Circuit held that this was an issue of first impression that it was unable to decide, and the Court of Appeals agreed by accepting the case. Moreover, Benesowitz cannot demonstrate that an award of attorneys' fees would act as a deterrent, that the Defendants' position lacked merit at the time it was taken, or that the newly-minted interpretation confers a common benefit on a group of Honeywell plan participants. (Because New York Law is not extra-territorial, it affects no other Honeywell plan participant. Moreover, even if it did, in actuality, the holding is to the detriment of plan participants, especially those with pre-existing conditions, who will be excluded from any coverage by the now-necessary underwriting). Accordingly, any application for attorneys' fees should be denied.[2]

---

[2]In the context of settlement negotiations, the parties agreed to proceed on two tracks. That is, these cross-motions for judgment are being filed while, at the same time, MetLife reviews medical and vocational information plaintiff submitted in support of his claim. By doing so, the parties agreed that Plaintiff has not waived his argument that MetLife waived the right to review any medical information by relying on the plan's pre-existing condition

## PROCEDURAL HISTORY AND RELEVANT FACTS

Plaintiff Benesowitz submitted a claim seeking benefits under the terms of the Plan asserting that he was disabled as of October 9, 2002. His claim was denied based upon the following Plan language:

> **Pre-Existing Condition Limitation** (Applicable to individuals who become eligible on or after January 1, 2001)
>
> Benefits will not be paid for any period of Disability caused or contributed to by, or resulting from, a Pre-existing Condition. A "Pre-Existing Condition" means any Injury or Sickness for which you incurred expenses, received medical treatment, care of services including diagnostic measures took to prescribed drugs or medicines, or for which the reason person would have consulted a Physician within three months before the most recent effective date of your coverage.
>
> The Pre-Existing Condition limitation will not apply to any added benefits or increases in benefits. This limitation will not apply to a period of Disability that begins after your coverage for at least 12 months after the most recent effective date of your coverage, or the effective date of any added or increased benefits.

Pursuant to the terms of the Plan if Benesowitz was determined to be eligible for benefits, his benefits would have first commenced on April 10, 2003. However, Benesowitz' claim was denied because the cause of his disability was a pre-existing condition. Although he initially misrepresented the date of onset when he filed the claim, it is undisputed that Benesowitz' condition, in fact, was a pre-existing condition under the terms of the Plan. As set forth in Your Honor's Memorandum and Order dated September 13, 2005, the following facts were relevant to the determination that Benesowitz' claim was a pre-existing condition:

> On April 1, 2002, Benesowitz was hired by Honeywell and became an 'active employee' as defined by the insurance agreement thus making him eligible for benefits [footnote omitted]. Just over six (6) months later, on October 9, 2002, Benesowitz quit his job at Honeywell due to kidney

---

exclusion, and Defendants have not waived their argument that New York law is inapplicable, and the pre-existing condition exclusion applies as it is stated in the Plan.

- 3 -

disease. On December 17, 2002, both of his kidneys were removed. Benesowitz underwent dialysis three (3) times per week until he received a replacement kidney in mid-March 2003. During that time Benesowitz received short term disability payments from MetLife with a maximum six (6) month period. Payments ended in April, one month after the transplant. Benesowitz has not received benefits from MetLife since then. Defendants terminated payments because it is believed that Benesowitz was not entitled to receive long term disability ("LTD") payments because his injury or sickness arose from a pre-existing condition" and that the disability arose within the first (12) months of Benesowitz coverage by the Plan.

Benesowitz v. Metro Life Ins. Co., 386 F. Supp. 2d 132, 133 (E.D.N.Y. 2005), *vacated* 514 F.3d 174 (2007) (Hereinafter "Benesowitz I").

In his Complaint, Benesowitz asserted that New York Insurance Law § 3234 prohibited "any group disability income insurance policy issued for delivery in New York State from excluding coverage for a period in excess of twelve months from the effective date of coverage for the covered person." (Complaint, paragraph 29). Benesowitz sought benefits, other equitable relief and attorneys' fees.

In June 2005, the parties filed cross-motions for summary judgment. By order dated September 13, 2005, this Honorable Court denied plaintiff's motion for summary judgment and granted the Defendants' motion for summary judgment. The decision held that New York law was applicable to the action because none of the exceptions describe employee groups, and that New York Insurance Law § 3234(a)(2) excludes coverage for disability caused by pre-existing conditions where the disability begins within the first twelve months of coverage. Benesowitz I at 136. The Court explicitly held that in rendering this decision it was following the Second Circuit decision in Pulvers, 210 F.3d 89 (2d Cir. 2000). Id. at 136-37.

Plaintiff appealed to the Second Circuit (Docket entry 55). The Second Circuit certified the issue to the New York Court of Appeals and requested that the Court of Appeals determine:

whether the rule that 'no pre-existing condition provision [in a disability insurance policy] shall exclude coverage for a period in excess of twelve months following the effective date of coverage for the covered person' means (1) that the policy may impose a twelve-month 'waiting period' during which coverage is excluded or (2) a policy may lawfully include a permanent absolute bar to coverage of disabilities resulting of pre-existing conditions.' We alternatively phrased the inquiries as whether 'if an insured becomes disabled (as a result of a pre-existing condition) during his first twelve months of coverage, does Section 3234(a)(2) allow an insurer to exclude coverage permanently, or must the insurer provide coverage after the reminder of the twelve-months have passed?'

Benesowitz v. Metro. Life Ins. Co., 471 F.3d 348, 351 (2d Cir. 2006). In doing so, the Second

Circuit explicitly stated, (1) "We have found no New York case settling" this issue; and (2) the

issue is of exceptional interest to both insurers and insureds in New York, as well as the state

itself. Id. at 351-352.

The New York Court of Appeals agreed to consider the issue and answered the certified

question as follows:

New York Insurance Law § 3234 (a) (2) means that a policy may impose its 12-month waiting period during which no benefits will be paid for disability stemming from a preexisting condition and arising in the first 12 months of coverage.

Benesowitz v. Metro. Life Ins. Co., 8 N.Y.3d 661, 670, 870 N.E.2d 1136, 1141, 839 N.Y.S.2d

706, 711 (2007). The New York Court of Appeals explicitly acknowledged in its opinion that

"the statute [N.Y. Ins. L. § 3234] is not a model of clarity." Id. at 666. The Second Circuit

vacated this Court's judgment based upon the Court of Appeals decision. Benesowitz v. Metro.

Life Inc. Co., 514 F.3d 174 (2d Cir. 2007).

Thereafter, the matter was remanded to this Court. The parties attempted to settle the

action, and all attempts were unsuccessful.

## LEGAL ARGUMENT

## POINT I

**JUDGMENT SHOULD BE ENTERED IN FAVOR OF THE DEFENDANTS AS NEW YORK INSURANCE LAW § 3234(A)(2) IS NOT APPLICABLE TO THE DELAWARE EMPLOYER GROUP POLICY AT ISSUE, AND THE DOCTRINE OF "LAW OF THE CASE" FAVORS DEPARTING FROM THE PRIOR HOLDING IN THESE CIRCUMSTANCES.**

In <u>Benesowitz I</u>, this Court held that New York law applied to this action. (<u>Benesowitz I</u> at 136). The United States Supreme Court has elucidated that the law of the case doctrine does not limit a court's power to exercise its discretion to avoid manifest injustice. Moreover, <u>Benesowitz I</u> has been vacated, and accordingly is no longer in effect. As the applicable group policy was issued to an employer in Delaware, a category New York law expressly excepts from its own reach, and as the New York Insurance Department's General Counsel's Office has opined on three separate occasions that the statute at issue does not apply to employer group policies issued **for delivery** in other states, Defendants respectfully submit that New York Insurance Law § 3234 does not apply to this matter, and this Court has both the power and discretion to so hold.

It is well-settled that "under law of the case doctrine as now most commonly understood, it is not improper for a Court to depart from a prior holding if it is convinced that it is clearly erroneous and would work manifest injustice." <u>Arizona v. California,</u> 460 U.S. 605, 618 n.8; 103 S. Ct. 1382, 1391 n.8 (1983). The Supreme Court explained:

> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. . . . Law of the case directs a court's discretion, it does not limit the tribunal's power. *Southern R. Co.*

> v. *Clift, 260 U.S. 316, 319 (1922)*; *Messenger v. Anderson, 225 U.S. 436, 444 (1912)*.

*Arizona,* 460 U.S. at 618; 103 S. Ct. at 1391 (some citations omitted).

As shown below, there is no question that the applicable New York statute, regardless of how it is to be interpreted, does not apply to employer-held group disability insurance policies issued for delivery in other states, like the one in this case. Moreover, the discretion and power to enter an order correcting an earlier holding to prevent manifest injustice in a given case exists even where the prior decision has *not* been vacated.

Here, the underlying judgment has been vacated. An order that has been vacated is null and void and the parties are left in the situation as if no order was ever entered. U.S. v. Uccio, 940 F.2d 753 (2d Cir. 1991) (reasoning that an order for a new trial renders the old trial null and void as if no trial had ever taken place); U.S. v. Lawson, 736 F.2d 835 (2d Cir. 1984); and Harris Trust and Savings Bank v. John Hancock Mutual Life Ins. Co., 970 F.2d 1138 (2d Cir. 1992). "It is well-settled in this circuit that a vacated order has no collateral estoppel effect." Harris Trust and Savings Bank at 1146 (citation omitted). A judgment that has been vacated, reversed or set aside on appeal is thereby deprived of all conclusive effects, both in res judicata and collateral estoppel. Universal Studios, Inc. v. Nintendo Co., Ltd, 578 F. Supp. 911, 919 (S.D.N.Y. 1983) (citing to Moore's Federal Practice). "Of course, vacating the order removes any res judicata or collateral estoppel effect that it might have." Corporation of Lloyd v. Lloyds, U.S., 831 F.2d 33, 36 (2d Cir. 1987).

The group policy at issue clearly states, "This policy is issued for delivery and governed by the State of Delaware."[3] Delaware does not regulate the exclusion of disability income benefits based on preexisting conditions. Your Honor previously held that New York law applied

---

[3] The group policy is attached to the Certification of Counsel as Exhibit "B."

to this action based upon plaintiff's argument premised upon New York Insurance Law § 3201(b)(1). *(See* <u>Benesowitz I</u> at 136):

> Plaintiff, however, correctly asserts that New York law is applicable:
>
>> A group life, group accident, group health, group accident and health or blanket accident and health insurance certificate evidencing insurance coverage for a resident of this state shall be deemed to have been delivered in this state, regardless of the place of actual delivery, unless the insured group is of the type described.... N.Y. Ins. Law § 3201(b)(1).

However, in quoting N.Y. Ins. Law § 3201(b)(1), Plaintiff inserted an ellipsis where the exceptions to New York Insurance Law § 3201 are set forth. These include, *inter alia*:

> (B) section four thousand two hundred thirty-five [4235] except subparagraph (D) where the group policy is issued to a trustee or trustees of a fund established or participated in by two or more employers not in the same industry with respect to an employer principally located within the state, sub-paragraph (K), (L) or (N) of paragraph one of subsection (c) thereof.

N.Y. Ins. Law § 3201(b)(1). New York Insurance Law § 4235, subparagraph (A), the applicable exception, provides:

> A policy issued to an employer ..., which employer ... shall be deemed the policyholder, insuring with or without evidence of insurability satisfactory to the insurer, employees of such employer and insuring, except as hereinafter provided, all of such employees or all of any class or classes thereof determined by conditions pertaining to the employment or a combination or such conditions and conditions pertaining to the family status of the employee for insurance coverage on each person insured based upon some plan which will preclude individual selection.

N.Y. Ins. Law § 4235(c)(1)(A). The New York Department of Insurance has issued multiple opinions holding that New York will not exert jurisdiction over such group policies issued outside the state of New York. 2005 N.Y. Ins. GC Opinion LEXIS 118 (May 9, 2005); 2004 N.Y. Ins. GC Opinion LEXIS 2067 (Oct. 14, 2004) ("an authorized insurer may issue a group

health insurance policy outside of New York to an employer to cover such employer's employees that work or reside in New York without having to comply with the New York Insurance Law if such group is denominated in *N.Y. Ins. Law § 3201(b)(1)*"); and 2002 N.Y. Ins. GC Opinion LEXIS 320 (Oct. 2, 2002)(copies attached hereto for the convenience of the Court to the Certification of Counsel as Exhibit "C").

Eligibility for coverage under the group policy that funds the Plan here is solely based upon an individual being an "active full-time Employee of Honeywell;" or "an Employee who is a member of a collective bargaining unit that is covered by the Plan." (Policy, page 1). The group policy was issued to Honeywell International, Inc. in Delaware. Accordingly, the policy is exempt from New York State law pursuant to N.Y. Ins. Law § 4235(c)(1)(A), which is an exception listed in N.Y. Ins. Law § 3201(b)(1). As this Court's previous decision holding New York law applicable has been vacated, it is respectfully submitted that this Court exercise its discretion and power and properly hold that the Court of Appeals' interpretation of N.Y. Ins. Law § 3234(a)(2) is not applicable to this case as New York law does not apply as a matter of law. The Plan is not required to comply with New York state insurance law because the Plan's funding mechanism is only regulated by Delaware state insurance law to the extent applicable under ERISA, 29 U.S.C. §§ 1001-1461.

It would be manifestly unjust to Honeywell and all the Plan participants who remain actively at work and contributing to the cost of the coverage if the Plan were made to pay benefits to Plaintiff although as a matter of law and undisputed fact, he is not eligible for those benefits. Accordingly, to hold that New York law is applicable would be clearly erroneous and would work a manifest injustice. Consequently, and as the prior decision has been vacated, it is respectfully submitted that this Court should hold that New York Insurance Law § 3234 is not

applicable to this matter, that no benefits are payable under the clear terms of the Plan, and that the Complaint should be dismissed in its entirety with prejudice.

## POINT II

### NO ATTORNEYS FEES SHOULD BE AWARDED TO BENESOWITZ AS HE CANNOT DEMONSTRATE ENTITLEMENT UNDER THE APPLICABLE FIVE FACTOR TEST

Seeking an award of attorneys' fees as a prevailing party under ERISA is highly unusual during the course of ongoing litigation, unless, of course, Plaintiff fears he will not ultimately prevail. Further, in an ERISA action, such an award is not automatic and the party seeking fees must demonstrate eligibility pursuant to the five part test enunciated by the Second Circuit in Chambless v. Masters & Pilot's Pension Plan, 815 F.2d 869 (2d Cir. 1987). Attorney's fees should not be awarded here, as the Plaintiff cannot demonstrate bad faith, a deterrent effect, lack of merit of Defendants' position, or that his case conferred a common benefit on any group of the Plan participants. Consequently, it is respectfully submitted that no attorney's fees should be awarded in this matter.

In an ERISA action, the District Court "in its discretion may allow a reasonable attorney's fee and costs to either party." 29 U.S.C. § 1132(g)(1); Miller v. United Welfare Fund, 72 F.3d 1066, 1074 (2d Cir. 1995). In determining whether to award attorneys' fees under 29 U.S.C. § 1132(g)(1) courts consider five factors:

1.  the degree of the offending party's culpability or bad faith;

2.  the ability of the offending party to satisfy an award of attorney's fees;

3.  whether an award of fees would deter other persons from acting similarly under like circumstances;

4.  the relative merit of the parties' positions; and

5. whether the action conferred a common benefit on a group of the plan participants.

*See* Chambless, at 871. An award of attorneys' fees is not automatic. Instead, it is within the District Court's sound discretion.

## A. NO BAD FAITH CAN BE DEMONSTRATED.

A Court may decline to award fees to a plaintiff, if it finds that the defendant acted neither oppressively nor in bad faith. *See, e.g.,* Leyda v. Allied Signal, Inc., 322 F.3d 199, 210-211 (2d Cir. 2003) (holding that it was not an abuse of discretion for the district court to deny the plaintiff's fee application when the defendant's actions were not unreasonable or in bad faith and the case was a close one). Moreover, the Court's disagreement with the defendant's claim decision does not automatically mean that an award of attorney's fees to plaintiff is appropriate. *See* Lauder v. First UNUM Life Ins. Co., 284 F.3d 375, 382-383 (2d Cir. 2001). Attorneys' fees should not be awarded if the party's positions have good merit or if bad faith has not been demonstrated. *See* Krauss v. Oxford Health Plans, Inc., 418 F. Supp. 2d 416 (S.D.N.Y. 2005); Critchlow v. First UNUM Life Ins. Co., 377 F. Supp. 2d 337 (W.D.N.Y. 2005); Quigley v. UNUM Life Ins. Co., 340 F. Supp. 2d 215 (D. Conn. 2004). Where both sides have substantial arguments, bad faith cannot be demonstrated. Dixon v. Seafarers' Welfare Plan, 878 F.2d 1411 (11th Cir. 1989). "In an extremely close case no bad faith can be demonstrated and attorneys' fees should be denied." Cook v. Liberty Life Ins. Co., 334 F.3d 122 (1st Cir. 2003).

Neither bad faith nor culpability can be demonstrated when the issue in dispute involved unsettled law. *See* Critchlow, at 344-45, where the court explained at length:

> In view of the then-unsettled state of the law concerning this issue, I see no bad faith on UNUM's part in denying plaintiff's claim for benefits. UNUM did not flout well-establish case law, but rather took a position that found some support among the relatively sparse case law on the subject. That is not indicative of bad faith. *See, e.g., Davis v. Mid-Century, Inc., Co.,* 311 F.3d 1250, 1252 (10th Cir. 2002) ("[f]or bad faith

liability to attach, the law at the time of the alleged bad faith must be settled.")(applying Oklahoma law); *TPLC, Inc. v. United Nat'l. Ins. Co.*, 44 F.3d 1484, 1496 (10th Cir. 1995)(affirming summary judgment in favor of an insurer on bad-faith because law was unsettled and authority from other jurisdictions supported the insurer's position) (applying Colorado law); *New York Teamsters Conference Pension and Retirement Fund v. Boening Bros. Inc.*, 92 F.3d 127, 130, 135 (2d Cir. 1996) (affirming district court's denial of attorney's fees and costs under ERISA, where the district court noted that "there is no evidence that defendants [acted] in bad faith," and that "[t]he law in this area was unsettled"); *Morgan v. Wal-Mart Associates' Health and Welfare Plan*, 214 F.Supp.2d 1047, 1052 (D. Ariz. 2002) ("While Defendant has been tenacious in its attempt to recover the benefits that it paid Morgan, the Court does not believe that Defendant has acted in bad faith. In particular, the Court has previously noted that prior to [the Supreme Court case on the issue in 2002] the circuit courts split on whether or not ERISA plans could recover in similar circumstance.").

Nor do I find the UNUM was "culpable" as one district court from within this circuit has explained:

A party is only culpable when it's conduct is intentional, blameworthy, and results in the breach of a legal duty. Although this Circuit has not always required a showing of malice or bad faith, a plaintiff must show something more than an ERISA [claim] administrator's determination that benefits are not to be allowed in a particular case. Additionally, this factor requires "conduct [that] normally involves something more than simple negligence . . . . [It] implies that the act or conduct spoken of is reprehensible or wrong . . . [citations omitted]."

\* \* \*

Again, I do not find any culpability here under these standards. Considering the unsettled state of the law at the time, the fact that two of the four federal judges involved in this case have construed the policy as excluding benefits on the facts of this case, and that the Court of Appeals for the Second Circuit was itself clearly divided on the issue -- ruling first for, then against UNUM - it appears that at least prior to the Second Circuit's most recent decision in this case, reasonable minds could have differed as to whether benefits should have been awarded to plaintiff. It could hardly be said that UNUM violated the policy's plain meaning in denying benefits.

Critchlow, at 344-45.

Similarly, neither bad faith nor culpability can be demonstrated in this matter on the part

of the Defendants. The state of the law was clearly unsettled at the time the claim decision was rendered. The District Court found in the Defendants' favor, properly basing its decision on the Second Circuit's opinion in <u>Pulvers</u>, 210 F.3d 89 (2d Cir. 2000). Accordingly, it was the District Court's opinion that the law was settled <u>in favor</u> of the Defendants' position. The Second Circuit held twice that there was no New York case interpreting the meaning of the New York statute, and consequently, certified the issue to the New York Court of Appeals, which acknowledged that the law was unsettled by agreeing to accept certification. The Defendants clearly did not act in bad faith in denying Plaintiff's claim under the terms of the Plan as the only decision on point, <u>Pulvers</u>, was in its favor. Moreover, the District Court determined that Defendants' position under the statute, even assuming its applicability, had merit. Accordingly, bad faith cannot be demonstrated, and thus attorneys' fee should not be awarded in favor of Benesowitz.

## B. NO DETERRENT EFFECT

In addition, Benesowitz cannot demonstrate an award of attorneys' fees would have a deterrent effect. MetLife rendered a claim determination based upon the clear terms of the Plan and on the law as it existed at the time (and still exists in Delaware, the relevant state insurance law). The award of attorneys' fees would serve no purpose with respect to deterring other claim administrators, as the claim determination was based upon then-existing law. It would be anomalous to hold that a deterrent factor can be established in a case where the law then-existing supported the Defendants' position, or where there was no law on point prior to the New York Court of Appeals' ruling on a matter of first impression. Defendants basing claim determinations on existing law should be encouraged, not deterred. Accordingly, Benesowitz cannot demonstrate that the award of attorneys' fees would serve a deterrent purpose.

## C. DEFENDANTS' POSITION DID NOT LACK MERIT

In addition, Benesowitz cannot demonstrate a lack of merit in the Defendants' position. In particular, the claim determination was rendered based upon the clear terms of the Plan and the law as it existed at the time. The District Court agreed and granted summary judgment in favor of the Defendants. The Second Circuit held that the law was uncertain and certified the issue to the New York Court of Appeals, which issued a decision of first impression that the Plan language violated New York Insurance Law § 3234. However, at the time rendered, the claim determination had merit as it was based upon the plain language of the Plan and was in accordance with New York law at the time, to the extent New York law applies at all, and remains consistent with Delaware state insurance law, which is, in fact, the state law applicable to the group policy that funds the Plan to the extent it is not preempted by ERISA. Consequently, Benesowitz cannot demonstrate MetLife's claim decision lacked merit under the terms of the Plan.

## D. NO COMMON BENEFIT BESTOWED ON ANY GROUP OF HONEYWELL PLAN PARTICIPANTS

Finally, plaintiff cannot demonstrate that the action will confer a common benefit on any group of Honeywell plan participants. In fact, the action will confer no benefits on the participants of the Honeywell Long Term Disability Plan as New York law is clearly not applicable to the Plan. However, with respect to individuals who seek to participate in group long term disability plans governed by New York law, the decision in the action is to their detriment, especially with respect to individuals, like plaintiff, with pre-existing conditions.

In response to the Benesowitz decision, the Department of Insurance issued Circular Letter No. 14 (Dec. 14, 2007) (attached to the Certification of Counsel as Exhibit "D" for the Court's convenience). Circular Letter 14 recognized that there is:

an alleged inconsistency between Insurance Law Section 3234(b), which permits medical underwriting, and Section 52.70(e)(2) of 11 NYCRR 52 (Regulation 62), which was promulgated prior to the enactment of Section 3234(b) and prohibits medical underwriting for groups of 300 or more lives. Since, as a matter of law, a statute supersedes any inconsistent regulatory provision, to the extent 11 NYCRR 52.70(e)(2) conflicts with Insurance Law Section 3234, the regulation's prohibition on individual underwriting for group disability policies has no force. The Insurance Department intends to amend this regulatory provision to ensure conformance with the statute.

Circular Letter No. 14 (Dec. 14, 2007). Accordingly, as a result of the newly-minted <u>Benesowitz</u> interpretation of New York insurance law, the Department of Insurance has now determined that individual underwriting is permitted for groups of three hundred or more lives. Consequently, individuals with pre-existing conditions, like plaintiff, will no longer be eligible for group long term disability insurance at all because employer-sponsored plans do not allow varying rates of premium or individualized coverage. Accordingly, the <u>Benesowitz</u> interpretation is to the detriment of all individuals with pre-existing conditions who seek long term disability insurance. Prior to this interpretation, such people were automatically covered for any disability commencing after the first twelve months of coverage, and for disabilities caused by anything other than their preexisting condition commencing within the first twelve months of coverage. The rates were low and affordable, and the coverage broad and inclusive. New Yorkers are now at a significant disadvantage under the new interpretation because each one will have to be individually underwritten, a costly procedure that will also affect pricing. *See* <u>Benesowitz v. Metropolitan Life Ins. Co.</u>, 8 N.Y.3d 661, 669-70, 870 N.E.2d 1136, 1141 (2007).

In addition, as a result of the <u>Benesowitz</u> interpretation, the New York Insurance Department recognized that group policy rates will be increased upon application. In its Circular Letter 14 at page 2 the Insurance Department invited insurers to submit new rates, and to specially mark these submissions so they could be expedited: "insurers should include a cover

letter that clearly identifies this submission as a 'Benesowitz case submission."[4] Consequently, as a result of the <u>Benesowitz</u> interpretation the cost of group insurance will increase for all group disability policies governed by New York law. This may also result in employers ceasing to offer group long term disability insurance to its employees because of the increased cost. That certainly cannot be a decision which confers a common benefit on any group of plan participants, even those who are not Honeywell Plan participants.

Accordingly, attorneys' fees should not be awarded to Plaintiff as he cannot demonstrate bad faith, deterrent effect, lack of merit, or that he conferred a common benefit on any group of plan participants as a whole.

## CONCLUSION

For the foregoing reasons, this Court should grant the Defendants' motion and hold that New York Law is not applicable to this action, and dismiss the complaint with prejudice, and that no attorneys' fees should be awarded

> MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
> Attorneys for Defendants, Metropolitan Life Insurance Company, incorrectly pleaded as "Plan Administrator of the Honeywell Long Term Disability Income Plan" and Honeywell Long Term Disability Income Plan
>
> _____
> Randi F. Knepper
>
> Amy K. Posner
> Attorney for Defendant,
> Metropolitan Life Insurance Company

---

[4] This necessary recognition that carriers would have to file for repricing was a tacit admission that its representation to the Second Circuit in open court entirely lacked merit. <u>Benesowitz</u>, 471 F.3d at 352 ("Indeed, the Solicitor General has represented to this court that the Superintendent set allowable rates for disability insurance policies based on his understanding that disability benefits for a pre-existing condition will only be precluded for a twelve-month period.")