Eve-Lynn Gisonni (EG-0758)
Gisonni & Harms, LLP
20 Crossways Park North - Ste. 412
Woodbury, New York 11797
(516) 921-7773

Attorneys for Plaintiff
Mitchell Benesowitz

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

MITCHELL BENESOWITZ,        :     04 CV 0805 (TCP)(MLO)

       Plaintiff,       :

   - vs. -        :

     :

METROPOLITAN LIFE INSURANCE     :
COMPANY, PLAN ADMINISTRATOR of
HONEYWELL LONG TERM DISABILITY     :
INCOME PLAN and HONEYWELL LONG
TERM DISABILITY INCOME PLAN,     :

       :

      Defendants.      :

------------------------------------------------------------

## MEMORANDUM OF LAW
## OF PLAINTIFF MITCHELL BENESOWITZ
## IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT

GISONNI & HARMS, LLP
20 Crossways Park North - Suite 412
Woodbury, New York 11797
(516) 921-7773

Of Counsel:
Eve-Lynn Gisonni

## TABLE OF CONTENTS

Page

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I      METLIFE MAY NOT RELITIGATE THE
             APPLICABILITY OF NEW YORK LAW TO THIS CASE. . . . . . . . . . . . . . . 1

        A.   Law of the Case doctrine precludes MetLife's
             attempt to get a second bite of the apple. . . . . . . . . . . . . . . . . . . . . . . . . . . .3

        B.   The Honeywell Long Term Disability Income Plan
             does not fall within one of the exceptions found
             in Insurance Law §3201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

        C.   The only way to avoid manifest injustice would be to
             reaffirm that New York law applies to the Honeywell SPD. . . . . . . . . . . . . . . .10

POINT II     METLIFE HAS FAILED TO MEET ITS BURDEN
             OF SHOWING THAT THIS COURT SHOULD NOT
             AWARD ATTORNEYS' FEES TO MR. BENESOWITZ. . . . . . . . . . . . . . . . . .12

        A.   Degree of MetLife's culpability or bad faith . . . . . . . . . . . . . . . . . . . . . . . . . .15

        B.   Ability to satisfy an award of fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.   Deterrent effect of award of fees on other persons
             from acting similarly under like circumstances . . . . . . . . . . . . . . . . . . . . . . . . .17

        D.   Relative merits of the parties' positions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

        E.   Whether the action conferred a common
             benefit on a group of plan participants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

(i)

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

<u>Algie v. RCA Global Communication, Inc., et al.</u>, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
891 F. Supp. 875, 891 (S.D.N.Y. 1994)

<u>Arizona v. California et al.</u>, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
460 U.S. 605, 618-619, 103 S.Ct. 1382, 1391 (1983)

<u>Benesowitz v. MetLife, et al.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 20
471 F.3d 348 (2d Cir. 2006)

<u>Benesowitz v. MetLife, et al.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16, 20
514 F.3d 174 (2d Cir. 2007)

<u>Benesowitz v. MetLife, et al.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
386 F.Supp.2d 132 (E.D.N.Y. 2005)

<u>Benesowitz v. MetLife, et al.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20
8 N.Y.3d 661 (N.Y. 2007)

<u>Benesowitz v. MetLife, et al.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20
9 N.Y.3d 913 (N.Y. 2007)

<u>Birmingham v. Sogen-Swiss International Corp. Ret. Plan</u>, . . . . . . . . . . . . . . . . . . . 12
718 F.2d 515, 523 (2d Cir. 1983)

<u>Burke v. Kodak Retirement Income Plan</u>, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
336 F.3d 103, 110 (2d Cir. 2003)

<u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
815 F. 2d 869, 871 (2d Cir. 1987), <i>cert. denied</i>, 496 U.S. 905, 110 S.Ct. 2587 (1990)

<u>Cohen v. MetLife</u>, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 20
2007 U.S. Dist LEXIS 86099, *6-7

<u>Cohen v. MetLife</u>, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
2008 U.S. Dist. LEXIS 32749, *6-7

<u>Cook v. N.Y. Times LTD Plan</u>, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
2004 U.S. Dist. LEXIS 8306, *5-6 (S.D.N.Y. 2004)

(ii)

Corporation of Lloyd's v. Lloyd's, et al.,
831 F.2d 33, 34 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Harris Trust and Savings Bank v. John Hancock Mutual Life Ins Co., . . . . . . . . . . . . . . . . . . . 7
970 F.2d 1138, 1146 (2d Cir. 1992)

Heidgerd v. Olin Corp., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
906 F2d 903, 908 (2d Cir. 1990)

Hensley v. Eckerhart, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . .12, 13
461 U.S. 424 (1983)

 In re Ivan F. Boesky Securities Litigation, . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
957 F.2d 65, 69 (2d Cir. 1992)

Jones v. UNUM Life Insurance Company of America, . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
2000 U.S. App. LEXIS 259, 278 (2d Cir. 2000)

Kerestan v. Merck & Co. LTD Plan, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
2007 U.S. Dist. LEXIS 90866, *6-7 (S.D.N.Y. 2007).

Koster v. Perales, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
903 F.2d 755, 758 (2d Cir. 1984)

LaForest v. Honeywell International, Inc., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13, 17
2006 U.S. Dist. LEXIS 87039 (W.D.N.Y. 2006)

Lijoi v. Continental Casualty Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
414 F.Supp 2d 228, 249 (E.D.N.Y. 2006).

MetLife v. Glenn,
128 S.Ct. 2343 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18

Miller v. United, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
72 F.3d 1066, 1074 (2d Cir. 1995)

Paese v. Hartford Life & Accident Ins. Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
449 F.3d 435, 450 (2d Cir. 2006)

Quern v. Jordan, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
440 U.S. 332, 347, 99 S. Ct. 1139 n. 18 (1979)

(iii)

Sheehan v. MetLife, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
450 F.Supp. 2d 321, 325 (S.D.N.Y. 2006)

Sompo Japan Insurance Co. v. Union Pacific Railroad Co., . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
2007 U.S. Dist. LEXIS 58162 (S.D.N.Y. 2007)

Universal City Studios, Inc. v. Nintendo Co., Ltd., et al., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
578 F.Supp. 911, 916 (S.D.N.Y. 1983)

United States v. Cirami, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
563 F.2d 26, 33 (2d Cir. 1977)

U.S. v. Lawson, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
736 F.2d 835 (2d Cir. 1984).

U.S. v. Uccio, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
940 F.2d 753, 757 (2d Cir. 1991)

Veltri v. Building Service 32B-J Pension Fund, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
2004 U.S. Dist. LEXIS 6834, *7-8 (S.D.N.Y. 2004)

Zurndorfer v. UNUM Life Ins. Co. of America, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
543 F.Supp. 2d 242, 246 (S.D.N.Y. 2008)


Statutes, Rules and Regulations:

N.Y. Insurance Law §3201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

N.Y. Ins. Law §3234(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 19

N.Y. Insurance Law §4235 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

29 U.S.C. §1132(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. §1133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

11 N.Y.C.R.R. 52.70(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

**ARGUMENT**

**POINT I**

**METLIFE MAY NOT RELITIGATE THE**
**APPLICABILITY OF NEW YORK LAW TO THIS CASE**

The Second Circuit Court of Appeals' decision yielded law of the case which implicitly and explicitly deemed New York law applicable to this litigation.  By virtue of the Certified Question posed to the New York State Court of Appeals to interpret a New York Insurance Law statute, the appellate courts operated with the conviction that New York law applies to this case.  If that was not the case, there would not have been any purpose for the appellate exercise.

Despite the exhaustive procedural history of this case, Defendants (hereinafter collectively referred to as "MetLife") impermissibly ask this Court to revisit the issue whether New York law applies to this action.  MetLife's moving brief for summary judgment in 2005 contained an entire point heading devoted to this issue with which this Court disagreed.  See MetLife moving brief filed June 15, 2005, page 15, Point Three at Docket No. 33.  In a decision dated September 13, 2005, this Court determined that New York law applied to the Honeywell Long Term Disability Plan ("Honeywell SPD").  As part of its decision granting summary judgment in favor of MetLife, this Court stated:

> Plaintiff...correctly asserts that New York law is applicable.

> \* \* \*

> Thus the Plan does need to conform to New York insurance law.

Benesowitz v. MetLife, et al., 386 F.Supp.2d 132 (E.D.N.Y. 2005).  At that time, this Court had before it all documents currently relied upon by MetLife in its application for judgment.  Thereafter, Mr. Benesowitz appealed the adverse decision to the Second Circuit Court of Appeals.  MetLife

failed to cross-appeal or even raise in briefs or oral argument the applicability of New York law

before the Federal Appeals Court or the New York Court of Appeals. In fact, for three years, the

billion dollar insurer rode the appellate wave, picking up amici curiae passengers along the way, all

of them fully agreeing to the applicability of New York law until they found themselves washed up

on the shore.

The Appellate courts did not disturb the applicability of New York law to this case. In fact,

the Second Circuit's decisions bolstered the fact that New York law applies. The Court stated:

> The New York Court of Appeals' decision requires us to vacate the
>
> district court's judgment, which was premised on the district court's
>
> conclusion that a permanent bar could be imposed. Benesowitz also
>
> asks that we award him attorney's fees and pre-judgment interest.
>
> The Employee Retirement Income Security Act of 1974 ("ERISA")
>
> authorizes "the court in its discretion [to] allow a reasonable
>
> attorney's fee and costs of action to either party." Pre-judgment
>
> interest is also available in the court's discretion. Because the district
>
> court determined that Benesowitz should not prevail, it had no
>
> occasion to consider his entitlement to attorney's fees or pre-
>
> judgment interest. We therefore remand in order that the district
>
> court may make these determinations in the first instance.

Benesowitz v. MetLife, et al., 514 F.3d 174, 176 (2d Cir. 2007)(Exhibit "D" annexed to

Benesowitz's moving papers). There is no reference in the Court's decision that even mentions a

reopening of the issue of the applicability of New York law. Simply put, this issue was conceded

by MetLife on appeal.

MetLife's only proffered excuse for raising this issue upon remand is to prevent manifest injustice. As shown below, in addition to MetLife's indelible concession that New York law applies to this action, as in 2005, it has made no evidentiary showing that the Honeywell SPD is the type that falls within a statutory exemption from New York law.

Although MetLife couches its motion as one for "judgment." It is clear that MetLife seeks summary judgment pursuant to Rule 56. In violation of Local Civil Rule 56.1(a), MetLife failed to serve a Rule 56.1 Statement in support of its motion. As such, we ask that this Court to deny Defendants' motion on these grounds alone.

**A.** **Law of the Case doctrine precludes MetLife's attempt to get a second bite of the apple.**

MetLife's contention to support relitigation of an already decided issue is premised on its twisted application of the effect of a vacatur of a district court's decision. MetLife contends that because the Second Circuit Court of Appeals vacated this court's decision, it is as if all prior proceedings have been erased. MetLife's argument fails to acknowledge that the Second Circuit Court of Appeals issued a mandate to this Court that carries power which prevents this Court from exercising any discretion concerning the Second Circuit's decision. In the first instance, the Second Circuit decision held that Mr. Benesowitz's interpretation of New York law prevails. It goes without saying that implicit in such a decision is that New York law applies to this action. Next, the specific mandate to this Court by the Second Circuit ordered the case remanded for further proceedings in accordance with its opinion. It is obvious that the Second Circuit's mandate to this Court limited this Court's power to issue judgment to Mr. Benesowitz consistent with its interpretation of New York State Insurance Law and to decide the issues of attorney's fees and pre-judgment interest.

3

Had the Second Circuit wished the parties to revisit all issues previously before this Court, it would have so held. If MetLife's twisted procedural approach were adopted by this Court or any court, then there would not be finality of any issues, and courts would be required to relitigate issues over and over again based on an extraordinarily simplistic interpretation of the word "vacate." Taking MetLife's approach to a logical conclusion, if this Court decides that New York law does not apply here, then Mr. Benesowitz may appeal the issue, and if successful before the Second Circuit Court of Appeals, upon vacatur, MetLife could make its argument a third time. MetLife's proposal to this Court would open the floodgates to relitigation of additional issues already decided by this Court in this case and could set a dangerous precedent that would tempt other litigants to reopen issues premised on a vacatur. For example, if this Court allows MetLife to relitigate the applicabiilty of New York law, then Mr. Benesowitz should be allowed to challenge the district court's extremely limited discovery in this action and to challenge the standard of review determined by this Court.[1]

A Circuit Court of Appeals does not issue opinions that should be followed by a party in its discretion. Yet, that is exactly how MetLife is treating the Appellate decisions here, and it is the rule MetLife seeks this Court to adopt. MetLife's attempt must be shut down. Had the Second Circuit wished to erase all prior proceedings, it would have so held. However, it did not. Should this Court determine that all prior proceedings have been erased, we respectfully request leave to renew and

---

[1] Since the decision of this Court, the U.S. Supreme Court issued a decision which changed the applicability of the abuse of discretion standard of review which requires this Court to consider MetLife's de facto conflict of interest as both insurer and administrator as a factor in determining the degree of MetLife's abuse of discretion. MetLife v. Glenn, 128 S.Ct. 2343 (2008). Also, a district court in the Second Circuit issued a decision which makes clear that the identical SPD in this case failed to give MetLife discretionary authority to make eligibility determinations and interpret plan provisions and, therefore, a de novo standard of review applies here. Kerestan v. Merck & Co. LTD Plan, 2007 U.S. Dist. LEXIS 90866, *6-7 (S.D.N.Y. 2007).

4

brief our request for discovery and our request that the Court impose a de novo standard of review to the fiduciary's denial.

The principles underlying the doctrine of law of the case ensure that parties will not continually be subjected to relitigation of issues already decided. Sompo Japan Insurance Co. v. Union Pacific Railroad Co., 2007 U.S. Dist. LEXIS 58162 (S.D.N.Y. 2007). The doctrine of law of the case applies with equal force to the proceedings before an appellate court and on remand. Id.

> The Second Circuit has spoken on the issue of raising new arguments
> on remand: 'It has become almost a judicial commonplace to say the
> litigation must end somewhere, and we reiterate our firm belief that
> courts should not encourage the reopening of final judgments or
> casually permit the relitigation of litigated issues out of friendliness
> to claims of unfortunate failures to put in one's best case.'

Sompo Japan Insurance Co., 2007 U.S. Dist. LEXIS 58162, at *11 *quoting* United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977).

"The district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate." In re Ivan F. Boesky Securities Litigation, 957 F.2d 65, 69 (2d Cir. 1992) *quoting* Quern v. Jordan, 440 U.S. 332, 347, 99 S. Ct. 1139 n. 18 (1979).

In keeping with the settled law of the Second Circuit, this Court may not allow MetLife to raise the same issue it raised before this Court and lost. The Second Circuit's two decisions and mandate, read together with the decision of the New York Court of Appeals, prohibits such conduct by MetLife. MetLife has failed to proffer a legally cognizable basis to undo the Second Circuit's decisions.

No new information has come to light that MetLife did not have the benefit of presenting to the Court on summary judgment in 2005.  A review of the insurance department opinions cited by MetLife demonstrate that all of them predate this Court's determination that New York law applies to this case.  See New York State Department of Insurance General Counsel Opinions dated May 9 ,2005, October 14, 2004 and October 2, 2002 annexed to MetLife's Certification at Exhibit "C." As such, MetLife could have made the same arguments it makes in the motion papers, sub judice, more than three years ago.

Moreover, in its moving brief, MetLife failed to cite any legal precedent with facts similar to the Benesowitz case that justify a relitigation of an entire case.  The cases cited by MetLife in support of its quest to relitigate this entire case are inapposite to the facts at bar.  First, contrary to MetLife's reference in its brief on page 7, in U.S. v. Uccio, the Second Circuit cited a principal that fully supports Mr. Benesowitz's position here.   Under the law of the case doctrine, a trial court is prevented from changing any of its prior decisions that have been ruled on by the appeals court.  U.S. v. Uccio, 940 F.2d 753, 757 (2d Cir. 1991).  All issues explicitly or implicitly decided on appeal remain the law of the case on remand for further proceedings.  Id. at 758.

MetLife's reliance on U.S. v. Lawson is equally misplaced.  The doctrine entitling a criminal defendant to erase the occurrences of his first trial in a reversal on appeal and remand for a new trial finds support in criminal procedure.  Upon reversal, the defendant and the prosecution are placed in the same situation as if no trial had ever taken place.  U.S. v. Lawson, 736 F.2d 835 (2d Cir. 1984). In Mr. Benesowitz's civil case, there was no trial and the rules of criminal procedure were not applied by the Court.

The remaining cases cited by MetLife also reveal bases for remand after appeal which are

6

quite different from the Benesowitz case and have no applicability here.  Universal City Studios, Inc. v. Nintendo Co., Ltd., et al., 578 F.Supp. 911, 916 (S.D.N.Y. 1983)(Court vacated prior judgments as a result of parties' settlement); Corporation of Lloyd's v. Lloyd's, et al., 831 F.2d 33, 34 (2d Cir. 1987)(Discovery order vacated in interlocutory appeal and case returned to trial judge to clarify basis for holdings); Harris Trust and Savings Bank v. John Hancock Mutual Life Ins Co., 970 F.2d 1138, 1146 (2d Cir. 1992)(Parties stipulated in settlement that Court's order was vacated and would have no force and effect against defendants).  None of the cases cited by MetLife involve a similar procedural process found in the instant case.  Unlike the litigants in Universal City Studios and Harris Trust and Savings Bank, in this case there was no settlement or agreement between the parties compelling a vacatur of a prior order.  Further, contrary to the appellate decision on interlocutory appeal in Corporation of Lloyd's which led to clarification by the district court, the Second Circuit decision here was final, and the court vacated and remanded the case to this Court to correct its decision premised on a misinterpretation of New York law and to entertain Mr. Benesowtitz's application for attorneys' fees and pre-judgment interest.  As such, this Court should give no effect to the cases proffered by MetLife as controlling precedent.

**B.      The Honeywell Long Term Disability Income Plan does not
fall within one of the exceptions found in Insurance Law §3201.**

Assuming, *arguendo*, that this Court entertains MetLife's argument, its request must nevertheless be denied because the Honeywell SPD is not the type of insurance plan described in Insurance Law §4235.

Section 4235 requires that the plan be of the type that insures all employees of the employer or all of any class or classes determined by conditions pertaining to employment.  Insurance Law

§4235(c)(1)(A).

The Honeywell SPD has mechanisms to exclude employees of Honeywell International. As such, the SPD does not insure all employees of Honeywell International as is required in order for the statutory exception to apply. See Honeywell SPD at Exhibit "1", A317-337[2] annexed hereto. The SPD at page 1 tells Late Entrants that they must provide evidence of good health by completing a form and depending upon the content of the form, late entrants may be required to undergo a physical examination at their expense. Exhibit "1", A.320. A physical examination is a manner in which the insurer can determine whether the individual is insurable and not an undesirable risk. The purpose of medical underwriting is to exclude certain undesirable risks.

The SPD also excludes employees of the company who are not in active service. Exhibit "1", A320. Under the SPD, employees are also not required to maintain coverage, thereby leaving a situation in which not all employees are covered under the plan as required in order for the statutory exception to apply. The SPD states that the employee "may drop coverage at any time." Exhibit "1", A.320.

MetLife has proferred no evidence on this record to the contrary. In fact, the references by MetLife in its brief at page 9 that eligibility for coverage is dependent upon an employee being an active full-time employee of Honeywell or an employee who is a member of a collective bargaining unit coverd by the Plan is no where to be found in the SPD, the Group Policy or the Certificate annexed to MetLife's Certification at Exhibit B. To the extent MetLife relies on a

---

[2]     References to "A __" are to portions of the Administrative Record as displayed at the top of each page in the Joint Appendix utilized on appeal before the Second Circuit Court of Appeals, which are annexed to the Affidavit of Eve-Lynn Gisonni, Esq.

document not part of this record, not before the Court for this proposition, and which postdates Mr. Benesowitz's date of disability of October 2002[3], we respectfully request that the Court disregard it in its entirety.

Next, there is no evidence on this record how, if at all, Delaware law would treat a preexisting condition differently than New York law. MetLife conclusorily states in its moving brief at page 7 that Delaware does not regulate preexisting condition exclusions. MetLife has failed to meet its burden of demonstrating that the applicability of Delaware law would change the outcome advanced by the Second Circuit and New York Court of Appeals. A twelfth hour attempt to do so in Reply briefing should be rejected by this Court.

A review of the Honeywell SPD reveals that there is no reference whatsoever that the plan is governed by Delaware law or that it was issued for delivery in that state. MetLife points to the group insurance policy that funds the SPD for support of its statement. However, when a group policy conflicts with an SPD, the language of the SPD controls. See Heidgerd v. Olin Corp., 906 F2d 903, 908 (2d Cir. 1990); Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 110 (2d Cir. 2003). Accordingly, this Court must look only to the SPD and reject MetLife's argument that Delaware law applies here.

Consistent with MetLife's failures to meet its burden of proof in its application to dismiss Mr. Benesowitz's claims, MetLife relies on opinions of the New York State Insurance Department

---

[3]       In prior proceedings before this Court, MetLife attempted to include a 2005 SPD which contained language different from the Honeywell SPD which was not produced to Mr. Benesowitz as part of his claim or administrative appeal. We objected then and we object now to the inclusion in the record of a document which postdates Mr. Benesowitz's date of disability by three years and which was not provided to Mr. Benesowitz as part of his full and fair review under ERISA.

that are not specific to the Honeywell SPD in issue.  MetLife could have procured an opinion of the New York State Insurance Department in support of its claim, as Mr. Benesowitz did in 2003, but it failed to do so.  See Opinion dated July 30, 2003 confirming Mr. Benesowitz's interpretation of Insurance Law 3234 annexed as Exhibit "2," A.148.  The May 9, 2005 Opinion annexed to MetLife's moving papers is inapplicable here because it involves a Multiple Employer Welfare Arrangement (MEWA) which is defined as a plan that is issued for the benefit of employees of two or more employers.  See MetLife Exhibit B.  There is no mention in the Honeywell SPD that it is a MEWA.  Further, the May 9, 2005 Opinion states that if a MEWA is fully insured, the Insurance Department does not regulate the plan directly, but imposes all applicable requirements on the insurer.  So in keeping with the Insurance Department's opinion, even if the Honeywell Plan constitutes a MEWA, MetLife would still be subject to the statutes and regulations of the Superintendent, including following New York law.  This Court should reject MetLife's argument to apply an exemption from New York law to the Plan in issue because the evidence on this record shows that the exemption is inapplicable to the Plan.

**C.**     **The only way to avoid manifest injustice would be to**
          **reaffirm that New York law applies to the Honeywell SPD.**

The greatest injustice that could occur in this extraordinarily protracted litigation would be for this Court to give any credence to MetLife's desperate last ditch effort to avoid liability here.  In its brief at page 9, MetLife conclusorily states that it would be unfair to Honeywell Corporation and the other participants of the SPD for Mr. Benesowitz to receive benefits under the Plan because he is not eligible.  MetLife fails to describe in what manner payment to Mr. Benesowitz by the insurer would in any way impact the long term disability plan or the other participants.

MetLife's protestations on the merits as set forth *supra* are belied by the facts of this case. Should the Court entertain MetLife's "manifest injustice" argument, then a weighing of the equities requires this Court to reject MetLife's position and adopt Mr. Benesowitz's position. From the inception of Mr. Benesowitz's claim, MetLife had the opportunity and the right to allege that New York law did not apply to the Honeywell SPD. But a review of the record reveals that once this Court determined that MetLife was wrong on the issue, MetLife conceded the issue by not appealing it. MetLife proceeded to oppose Mr. Benesowitz's interpretation of the New York statute through the Federal appellate process and the state court appellate process lasting three long years without ever raising this issue until now, when it has been finally determined that MetLife must pay Mr. Benesowitz under the SPD. After five years of advancing his claim, it would be manifestly unjust for this Court to strip Mr. Benesowitz of the right to benefits to which the appellate courts deemed he was entitled.

The only case cited by MetLife to support its plea to this court to depart from New York law under the principles of law of the case does not even apply the doctrine. Arizona v. California et al., 460 U.S. 605, 618-619, 103 S.Ct. 1382, 1391 (1983). The decision makes clear, however, that the law of the case doctrine referenced in dicta applies to a trial court's decisions over the course of a litigation. Arizona, 460 U.S. at 618-619, 103 S.Ct. at 1391. The Arizona case does not address the issue present in this case in which an Appellate Court has made findings that must be adhered to by the district court on remand. Arizona, 460 U.S. 605, 103 S.Ct. 1382.

The only injustice that exists here is in MetLife's actions in failing to abide the clear import of the Second Circuit's decision and the insurer's concomitant refusal to pay Mr. Benesowitz any benefits to date. MetLife's actions are especially obstreperous where, as here, the highest Court

11

in the State of New York has told this New York insurer that it lost.

What is even more confounding is that the exact reason the Second Circuit Court of Appeals asked the New York State Court of Appeals to decide a certified question was premised on an interpretation of a New York Insurance Law statute. MetLife sat on its rights all along the three year appellate path. Could it be that the insurer was so smug in its beliefs that it had no chance of losing and decided not to raise this threshold issue on appeal. This Court simply cannot countenance such conduct. In fact, we contend that any perpetuation of this issue should carry with it sanctions for the unwavering frivolity that accompanies MetLife's impudence.

We ask this Court to deny MetLife's motion for judgment because there is no controlling precedent cited by MetLife to depart from a well-settled threshold determination that New York law applies to this case.

**POINT II**

**METLIFE HAS FAILED TO MEET ITS BURDEN OF SHOWING THAT THIS COURT SHOULD NOT AWARD ATTORNEYS' FEES TO MR. BENESOWITZ**

Attorneys' fees are available to a prevailing party under the ERISA statute in the absence of a particular justification for not awarding fees. Birmingham v. Sogen-Swiss International Corp. Ret. Plan, 718 F.2d 515, 523 (2d Cir. 1983). ERISA confers discretionary authority upon this Court to issue such awards. 29 U.S.C. §1132(g)(1). If the court deems a litigant to be the prevailing party, then he is entitled to a fee award, and it is up to the court to determine what fee is reasonable. Hensley v. Eckerhart, 461 U.S. 424 (1983). But, a party need not be the prevailing party in a litigation in order to merit an award of attorneys' fees. Miller v. United, 72 F.3d 1066, 1074 (2d Cir. 1995); LaForest v. Honeywell International, Inc., 2006 U.S. Dist. LEXIS 87039

12

(W.D.N.Y. 2006).

A litigant is considered a prevailing party if any decision of the court changed the legal relationship of the opposing parties. Koster v. Perales, 903 F.2d 755, 758 (2d Cir. 1984). Mr. Benesowitz may be considered a prevailing party if he "succeed[s] on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit. Hensley, 461 U.S. 424, 433. Moreover, attorneys' fees are available to litigants even though a litigation is ongoing. Cohen v. MetLife, 2007 U.S. Dist LEXIS 86099, *6-7 (Court awarded fees to ERISA disability participant in which Plaintiff won partial summary judgment reversing challenged benefit denial and remand of matter to plan administrator for disability determination); *accord* Cook v. N.Y. Times LTD Plan, 2004 U.S. Dist. LEXIS 8306, *5-6 (S.D.N.Y. 2004).

To determine the amount of the fee award, the federal courts consider five factors. No individual factor must be proven in order to award fees. The factors include:

> (1) The degree of the offending parties' culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorneys' fees; (3) whether an award of fees would deter other persons from acting similarly under like circumstances; (4) the relative merits of the parties' positions; and (5) whether the action conferred a common benefit on a group of pension plan participants.

Jones v. UNUM Life Insurance Company of America, 2000 U.S. App. LEXIS 259, 278 (2d Cir. 2000)(quoting Chambless v. Masters, Mates & Pilots Pension Plan, 815 F. 2d 869, 871 (2d Cir. 1987), *cert. denied*, 496 U.S. 905, 110 S.Ct. 2587 (1990).

There is no requirement for Mr. Benesowitz to demonstrate that he is the prevailing party in this litigation in order to merit an award of attorneys' fees. However, because the New York Court of Appeals agreed with Mr. Benesowitz's interpretation of Insurance Law §3234(a)(2),

13

regardless how the Defendants or the Court describe the current state of the litigation, he is a prevailing party and is entitled to an award of fees. The Second Circuit agrees with this rationale and stated in its decision the following:

> Because a decision in Benesowitz's favor on the issue we certify to the Court of Appeals would necessarily result in judgment in his favor just as a decision adopting MetLife's interpretation of Section 3234(a) would require judgment in favor of defendants, certification will likely dictate the result of both this appeal and district court proceedings on remand.

Benesowitz v. MetLife, 471 F.3d 348 (2d Cir. 2006). See also Sheehan v. MetLife, 450 F.Supp. 2d 321, 325 (S.D.N.Y. 2006)(Court awarded fees to disabled Plaintiff even though he was not 100 percent successful in obtaining all back benefits he sought in his Complaint.)

Consequently, the question here is not whether Mr. Benesowitz is entitled to an award of attorneys' fees, but rather, what is the award that the Court will give Mr. Benesowitz in its discretion as guided by the Jones factors, *supra*.

As thoroughly set forth in Mr. Benesowitz's brief in support of his Motion for Summary Judgment, sub judice, for efficiency sake, he specifically reserved his rights to make application for fees once the Court issues judgment on the cross-motions. Because MetLife sees fit to disregard each and every part of the Second Circuit's decision in favor of Mr. Benesowitz, we must now oppose MetLife's motion against judgment for fees for Mr. Benesowitz. We respectfully reiterate our application for leave to make formal application for fees once this Court issues final judgment in this case, and we seek leave to submit contemporaneous billing records justifying an

14

award in favor of Mr. Benesowitz.

　　We address each of the <u>Jones</u> factors in kind below:

**A.    <u>Degree of MetLife's culpability or bad faith</u>**

　　Mr. Benesowitz need not demonstrate Defendants' bad faith to prevail on the first factor. <u>Algie v. RCA Global Communication, Inc., et al.</u>, 891 F. Supp. 875, 891 (S.D.N.Y. 1994). During the claim and administrative review process, MetLife did not give Mr. Benesowitz a full and fair review of his ERISA claim as required pursuant to 29 U.S.C. §1133. Despite that Mr. Benesowitz sought and obtained the Superintendent's opinion of the proper interpretation of the Insurance Law statute in his favor at the very inception of this case in 2003, MetLife failed to consider the same. <u>See</u> Mr. Benesowitz appeal letters dated July 23, 2003 and July 30, 2003 and MetLife's response annexed as Exhibit "3", A.136-142, 146-147, 165-166." In fact, even though the Superintendent submitted an amicus brief formally advancing its opinion in favor of Mr. Benesowitz before the Second Circuit, MetLife persisted in its refusal to adopt Mr. Benesowitz's argument and elected to fight both the Superintendent and Mr. Benesowitz. Critically, the Superintendent stated that Mr. Benesowitz's interpretation had always been the state of the law since enactment of the statute in 1993. <u>See</u> Exhibit "7," Superintendent's Amicus Curiae brief to the Second Circuit Court of Appeals, page 3. The Superintendent also opined that he set premium rate structures in keeping with Mr. Benesowitz's interpretation such that a contrary interpretation of Insurance Law §3234 would result in a windfall to insurers who have charged premiums and not conferred an appropriate benefit on deserving insureds. Exhibit "7," pages 14, 21.

　　This is further confirmed by the Superintendent's actions in requiring all disability insurance companies in the state of New York who have wrongfully denied individuals disabled

due to pre-existing conditions to reopen claims and pay back benefits.  See Circular Letter of

Superintendent annexed as Exhibit "4."  As such, contrary to MetLife's contention that this case

was a close call, the Superintendent has not wavered in its interpretation of Insurance Law §3234.

Further, contrary to MetLife's spin, the Second Circuit Court of Appeals and New York Court of

Appeals' decisions were unanimous in favor of Mr. Benesowitz.  See Benesowitz v. MetLife, 471

F.3d 348 (2d Cir. 2006); 514 F.3d 174 (2d Cir. 2007); 8 N.Y.3d 661 (N.Y. 2007).  MetLife's

motion for reargument before the New York Court of Appeals also met unanimous rejection.

Benesowitz v. MetLife, 9 N.Y.3d 913 (N.Y. 2007).

The current motion for judgment by MetLife further amplifies the fact that MetLife

continues to act culpably because even after the Superintendent and both appellate courts have

spoken, MetLife still refuses to pay Mr. Benesowitz any disability benefits.  Such conduct

constitutes culpability that satisfies the first factor under Jones.  Veltri v. Building Service 32B-J

Pension Fund, 2004 U.S. Dist. LEXIS 6834, *7-8 (S.D.N.Y. 2004)(Failure to afford disabled

participant with full and fair review under ERISA satisfies culpability factor).  Paese v. Hartford

Life & Accident Ins. Co., 449 F.3d 435, 450 (2d Cir. 2006)(Culpable conduct apparent when act

of fiduciary in denying benefits and forcing disabled participant to sue allowed fiduciary to avoid

payment for more than two years.)  MetLife's perpetuation of a blind refusal to pay benefits and

allow fees to those wholly deserving of them punctuates the necessity of awarding fees for its

culpable conduct.

## B.     Ability to satisfy an award of fees

MetLife has not contested its ability to satisfy an award of fees in briefing before this Court

in 2005 and in the present papers before the Court.  As such, there is no basis on this factor to not

award fees to Mr. Benesowitz.

**C.    Deterrent effect of award of fees on other persons**
       **from acting similarly under like circumstances**

MetLife has endless resources to perpetuate litigations and drive penniless disabled insureds to their knees. See, e.g., Cohen v. MetLife, 2008 U.S. Dist. LEXIS 32749, *6-7(District Court sanctioned MetLife for wilfully refusing to pay an award of back benefits to a disabled participant ordered under a long term disability plan administered by the insurance giant.)  This Court's award of fees to Mr. Benesowitz will serve to deter other insurers and plans from refusing to pay disabled persons who suffer from pre-existing conditions.  Such award would also act as a warning to other fiduciaries to consider all existing positions in favor of the participant and to open up a dialogue with the Insurance Department and other individuals material to a claim before they engage in expensive and protracted litigations.  An award of fees promotes an administrative process yielding a fair and thorough review of the record by a plan fiduciary and deters other fiduciaries from acting derelict in their duties. Cohen,  2007 U.S. Dist LEXIS 86099, *7.  An award of fees deters similarly-situated plan fiduciaries who fail to honor their duties to plan participants and beneficiaries because it is not in their economic interest to do so. LaForest, 2006 U.S. Dist. LEXIS 87039, *9-10. (W.D.N.Y. 2006).

When a larger provider of group disability insurance is admonished for its failures under a plan, such decisions are scrutinized by other plan providers who are deterred from acting similarly.  Zurndorfer v. UNUM Life Ins. Co. of America, 543 F.Supp. 2d 242, 246 (S.D.N.Y. 2008).

Here, had MetLife actually considered the opinion Mr. Benesowitz provided to the

insurance giant on administrative appeal, and looked into the matter by communicating with the Insurance Department, it would have confirmed that it was acting inappropriately under the law as Mr. Benesowitz so advised. MetLife's failures serve as an example to other insurers acting as plan fiduciaries to engage in an open dialogue with their insured to ensure the insured obtains a full and fair review to which he is entitled. MetLife perpetuated this litigation even when it obtained the Superintendent's formal opinion in an amicus brief invited by the Second Circuit Court of Appeals. This Court should not condone such conduct, especially under the ERISA statutory scheme which requires plan fiduciaries to act in the interests of participants. The U.S. Supreme Court recently stated in a case brought to the High Court by MetLife:

> ..ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, §1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a full and fair review" of claim denials.....

MetLife v. Glenn, 128 S.Ct. 2343, 2350 (2008).

Here, it is apparent that MetLife failed to acknowledge the Superintendent's opinion because it was not in its economic interest to do so. Judge Glasser eloquently described the deterrent effect a fee award imposes on an insurer electing to litigate rather than act in the participant's interests:

"This Court would hope that no insurer in a situation similar to Continental's would choose to litigate the issue for seven years, rather than recognize its error, reverse its decision, and award benefits. Perhaps a future insurer will consider that in addition to the benefits that it will be obligated to pay as of right to the plaintiff, it will also be responsible for the attorneys' fees incurred as a result of its obstinance, however nominal that fee might be in relation to the hardship its delay tactics impose upon a disabled plaintiff."

Lijoi v. Continental Casualty Co., 414 F.Supp 2d 228, 249 (E.D.N.Y. 2006).

Apparently, the Lijoi case did not deter MetLife here. We ask that this Court award fees to deter further dilatory tactics which MetLife performs with such ease and disregard for repercussions.

In keeping with the principles as set forth above, as a result of Mr. Benesowitz's success before the New York Court of Appeals and the Second Circuit Court of Appeals, all insurers acting as fiduciaries in the state of New York under group long term disability plans have been explicitly reminded of their obligations under Insurance Law §3234(a). In addition to requiring insurers to reopen claims going as far back as six years, each insurer is required to post on their websites a notification concerning their obligations under the law. See Exhibit "5," hard copies of website home pages of 16 insurers acknowledging their obligations to inform insureds who have suffered from pre-existing conditions of their rights. In addition, this case has received publicity in legal and insurance circles such that plan administrators and insurers will be deterred from acting as

19

MetLife has here.  See Exhibit "6," New York Law Journal Articles dated December 26, 2006 and January 8, 2008, as well as Mealey's Disability Insurance Reporter Article in January 2008 issue.

In light of the impact Mr. Benesowitz's win has made on all insurers in the state of New York writing disability policies and the widespread publicity the case has received, MetLife cannot demonstrate any justification for not awarding fees based on this factor.

**D.**     **Relative merits of the parties' positions**

A party who prevails on a key issue satisfies this factor.  Cohen v. MetLife, 2007 U.S. Dist LEXIS 86099, *7.  As previously set forth herein, on appeal, MetLife lost every argument it advanced against Mr. Benesowitz.  Both appellate courts unanimously rejected MetLife's arguments on four occasions. See Benesowitz v. MetLife, 471 F.3d 348 (2d Cir. 2006); 514 F.3d 174 (2d Cir. 2007); 8 N.Y.3d 661 (N.Y. 2007) and 9 N.Y.3d 913 (N.Y. 2007).  Moreover, the Superintendent confirmed that Mr. Benesowitz's interpretation of §3234(a) has always been the state of the law.  Exhibit "7," page 3.

MetLife continues to aver that it made a claim determination based on the terms of the Plan and law as it existed.  The record is contrary to MetLife's averments.  Even after the Department that regulates MetLife confirmed that Mr. Benesowitz's interpretation was correct and MetLife's interpretation was not in 2003, MetLife continued to maintain the unlawful language in the Honeywell Plan, and presumably, all other group plans under which MetLife serves as a fiduciary.  As such, Defendants unlawfully continued to maintain an invalid pre-existing condition exclusion in the SPD, and MetLife continued to deny benefits to participants who became disabled from pre-existing conditions within the first 12 months of employment who had no prior creditable coverage.

**E.**      <u>**Whether the action conferred a common benefit on a group of plan participants**</u>

A survey of reported ERISA disability cases reveals that in the Second Circuit, there has not been a greater articulable common benefit conferred on a group of disability plan participants in a non-class action context as has occurred in the <u>Benesowitz</u> case.  For the past five years, Mr. Benesowitz persisted in his conviction that his interpretation was the correct one as supported by the New York State Insurance Department.  This undisputed fact is fully supported by the Superintendent's Circular Letter dated December 14, 2007 and the numerous disability insurers who complied with the Superintendent's requirement to post information concerning this case on their websites.   As a result, countless thousands of disabled individuals previously denied disability benefits by MetLife and other plan fiduciaries have recouped the benefits they were wrongfully denied, including interest.  Ironically, Mr. Benesowitz is not one of them.

It is undisputed that the Honeywell long term disability plan is not the only plan in which MetLife serves as a fiduciary.  As such, all plan participants in any MetLife-administered plan benefit from retroactive disability payments.  Plus, on a go forward basis, MetLife and any other plan fiduciary in New York may not bar benefits altogether to participants who become disabled due to a pre-existing condition within the first twelve months of employment and have no prior creditable coverage.  After the twelfth month, those suffering from pre-existing conditions are eligible to receive benefits.

MetLife conclusorily contends that prospective participants will be declined coverage as a result of the Benesowitz case.  MetLife's contention is belied by the actual language of the Honeywell SPD.  The SPD at page 1 tells Late Entrants that they must provide evidence of good health by completing a form and depending upon the content of the form, late entrants may be

required to undergo a physical examination at their expense, demonstrating that individual underwriting occurs under the SPD. Exhibit "1", A.320. Further, there is no support in this record or annexed to MetLife's moving papers that employer-sponsored plans will decline to insure individual risks as allowed under §3234. Similarly, MetLife's forecast of doom that underwriting will affect pricing of disability insurance is also not supported by anything but its conclusions. As such, this Court should reject MetLife's argument.

Contrary to MetLife's contention, the Superintendent in his Circular Letter stated that rate adjustments were <u>not</u> required in light of the <u>Benesowitz</u> decision. Exhibit "4," page 3. If an insurer contemplates a rate adjustment, the insurer must provide proof via an actuarial memorandum and supporting data. <u>Id</u>. If an insurer proves entitlement to a rate increase, the Superintendent will only allow a <u>prospective</u> rate increase. <u>Id</u>. That important restriction proves that the Superintendent's allowance of premium rate increases applies to groups greater than 300 who were believed they were previously unauthorized to underwrite because of the existence of 11 N.Y.C.R.R. 52.70(e)(2) which the Superintendent stated has no force. Exhibit "4," page 2. Previously, these groups were not authorized to charge increased premiums.

On the strength of the foregoing points, there is no justification to decline to award Mr. Benesowitz attorneys' fees and costs. Mr. Benesowitz respectfully requests leave to seek pre-judgment interest upon issuance of final Judgment by this Court.

**CONCLUSION**

Mitchell Benesowitz respectfully requests that this Court deny MetLife's motion for judgment in its entirety and issue judgment of attorneys' fees in Mr. Benesowitz's favor with leave to submit billing statements for the Court's consideration.

Dated:      Woodbury, New York
               August 5, 2008

GISONNI & HARMS, LLP

By:    Eve-Lynn Gisonni (EG-0758)
       20 Crossways Park North - Suite 412
       Woodbury, New York 11797
       (516) 921-7773

       Attorneys for Plaintiff
       Mitchell Benesowitz

23